**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna Ray, | No. CV-19-05821-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Donna Ray's Application for Disability Insurance benefits by the Social Security Administration (SSA) under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl. Br."), Defendant SSA Commissioner's Answering Brief (Doc. 16, "Def. Br."), and Plaintiff's Reply (Doc. 17, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 12, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 14–36) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed her Application for Disability Insurance benefits on February 13, 2014, alleging disability beginning February 2, 2014. (*Id.* at 122.) After a hearing before an ALJ, Plaintiff's claim was denied on May 11, 2016. (*Id.* at 146–68.) On June 25, 2018, the Appeals Council remanded Plaintiff's case for a new hearing. (*Id.* at 169–174.) On

March 7, 2019, Plaintiff again appeared for a hearing on her claim, which the ALJ again denied on May 21, 2019. (*Id.* at 14–26, 73–120.) On October 17, 2019, the Appeal Council denied Plaintiff's request for review. (*Id.* at 1–6.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: cervical and lumbar radiculopathy; lumbar spondylosis; peripheral vascular disease; carotid artery stenosis with right carotid artery endarterectomy; hypertension, chronic pain syndrome; and hyperlipidemia. (*Id.* at 19.) The ALJ also determined that Plaintiff's medically determinable impairments of major depressive disorder, generalized anxiety disorder, and panic disorder are "nonsevere" impairments. (*Id.* at 20.) Still, the ALJ found that Plaintiff's mental impairments cause her mild limitations in the functional areas of (1) interacting with others and (2) concentrating, persisting, or maintaining pace. (*Id.* at 20.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability-onset date through the date of the decision. (*Id.* at 25.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 20.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC") and concluded that "[Plaintiff] has the [RFC] to perform the full range of sedentary work." (*Id.* at 21.) The ALJ further found that "[Plaintiff] is unable to perform any past relevant work . . . but has acquired work skills from past relevant work." (*Id.* at 24.) Specifically, the ALJ found that Plaintiff acquired "the following skills: use of office equipment, direct interaction with customers, and customer service in an office environment." (*Id.*) Accordingly, the ALJ found that Plaintiff "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (*Id.*)

. . . .

## II. LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy

based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three central arguments for the Court's consideration. First, Plaintiff argues that the Commissioner failed to meet his burden at step five to establish that Plaintiff can perform other work that exists in the national economy. (Pl. Br. at 4.) Plaintiff develops this argument in two distinct ways. She argues first that the ALJ incorrectly determined that Plaintiff acquired transferrable skills from her past relevant work; instead, she argues that the ALJ identified mere "aptitudes" rather than skills. (*Id.* at 9–11.) She also argues that the ALJ incorrectly found that the occupations Plaintiff could perform would not require "very little, if any, vocational adjustment," as required. (*Id.* at 6–8.) Plaintiff's next argument is that because the ALJ incorrectly rejected the opinions of her treating psychiatrist, the ALJ erroneously found that her mental impairments are nonsevere. (*Id.* at 13–17.) Finally, Plaintiff argues that the ALJ miscalculated her RFC by failing to include mental limitations stemming from mild limitations in two functional domains that the ALJ found she has at step 2. (*Id.* at 17–18.)

The Court rejects each of Plaintiff's arguments. First, substantial evidence supports the ALJ's determination that Plaintiff can perform work that exists in the national economy. Specifically, the ALJ properly determined that Plaintiff acquired transferrable skills—use of office equipment, direct interaction with customers, and customer service in an office environment—from her past relevant work. (R. at 24.) Similarly, the ALJ properly relied on vocational expert (VE) testimony to determine that those skills are transferable to sedentary work with very little, if any, adjustment. (*Id.* at 108.) Next, the ALJ did not err by concluding that Plaintiff's mental impairments were nonsevere, nor by rejecting the opinion of Plaintiff's treating physician. (*Id.* at 20, 24.) Finally, substantial evidence supports the ALJ's calculation of Plaintiff's RFC, even though the ALJ did not include any mental limitations. (*Id.* at 21.)

. . . .

**A.   Substantial evidence supports the ALJ's step five determination that Plaintiff has work skills that are transferable to other occupations with jobs existing in significant numbers in the national economy.**

Once an ALJ determines that a claimant cannot perform her past relevant work, the burden shifts to the Commissioner to establish that there is other work in the national economy based on the claimant's RFC, age, education, and work experience that she can perform. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant is age 55 or older and has severe impairments that limit her to sedentary work, the Commissioner "will find that [the claimant] cannot make an adjustment to other work unless [she has] skills that [she] can transfer to other skilled or semiskilled work. 20 C.F.R. § 404.1568(d)(4). "A finding of transferability is most probable among jobs that involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a similarity of services or products." 20 C.F.R. § 404.1568(d)(2). However, "[c]omplete similarity of skills ... is not necessary." 20 C.F.R. § 404.1568(d)(3). Furthermore, "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404 Subpt. P, App. 2 § 201.00(f).

Skills are "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level . . . . A skill gives a person a special advantage over unskilled workers in the labor market." *See* Social Security Ruling 82-41(2)(a). Conversely, certain qualities such as perception and motor coordination are properly considered aptitudes rather than skills. *See Paulson v. Bowen*, 836 F.2d 1249 (9th Cir. 1988).

Here, the ALJ properly determined that Plaintiff has skills—and not merely aptitudes—that are transferrable to other occupations with jobs existing in significant numbers in the national economy. Further, the ALJ properly relied on VE testimony that

Plaintiff's skills are "transferrable to sedentary work in which there would be very little, if any, vocational adjustment." (R. at 108.)

### 1. The ALJ correctly found that Plaintiff had transferrable skills rather than mere aptitudes.

Plaintiff argues that "the ALJ failed to make an effective transferrable skills analysis when she relied on the VE's testimony regarding not skills, but rather a general aptitude for using basic office equipment." (Pl. Br. at 10.) Plaintiff further argues that "the VE identified no specific skills in her testimony. Nor did she provide enough information to glean what actual skills might transfer in this situation. Further, the ALJ took it upon herself to identify skills that the VE herself did not . . . . At best, the VE identified a single general aptitude for using telephones and fax machines." (*Id*. at 10–11) (emphasis in original).

The Court rejects Plaintiff's arguments because she understates the VE's testimony and ignores Ninth Circuit precedent. Initially, the VE testified that Plaintiff had transferable "clerical, office, and customer service types of skills." (R. at 108.) Next, the VE immediately elaborated, testifying that "the skills [that] would be acquired would have been general use of office equipment, so that would transfer to a number of occupations as well as direct interaction with customers, [and] customer service in the environment." (*Id*.) Thus, Plaintiff's argument plainly understates that the VE merely "identified a single general aptitude for using telephones and fax machines." (Pl. Br. at 10–11.) Unlike the cases Plaintiff cites for support, here, the ALJ did not mischaracterize aptitudes like perception or motor coordination as skills. Indeed, Plaintiff asserts without support that "'general use of office equipment' is an aptitude, not a skill category, under Agency policy." (Pl. Br. at 10.)   However, the Ninth Circuit has held that "knowledge of office procedures" and "administrative, interpersonal, and analytical [abilities]" are properly classified as skills rather than aptitudes. *See Anglin v. Massanari*, 18 F. App'x 551, 553–54 (9th Cir. 2001); *see also Hartley v. Colvin*, No. 2:13-CV-1863 AC, 2014 WL 6058652, at *4 (E.D. Cal. Nov. 12, 2014), aff'd, 672 F. App'x 743 (9th Cir. 2017) (finding that the ability to work with office equipment and perform customer service are properly

characterized as skills); *see also Olguin v. Astrue*, No. EDCV 11-1802-OP, 2012 WL 4711775, at *3 (C.D. Cal. Oct. 1, 2012) (finding that basic decision-making skills, communication skills, the ability to work effectively with the public and professionals, ability to work within an office, and using office equipment were properly classified as skills rather than aptitudes). Accordingly, the ALJ's finding is consistent with the law and the VE's testimony that Plaintiff has transferrable skills and not merely aptitudes.

**2. The ALJ correctly determined that Plaintiff's skills would be transferrable to sedentary work with very little, if any, adjustment.**

Plaintiff argues that the ALJ erroneously found that the occupations Plaintiff can perform "would not require 'very little, if any, vocational adjustment,' as is required in determining transferrable skills in this case." (Pl. Br. at 8.) Plaintiff bases her argument on the differences between the "tools, work processes, work settings, and industries" of her past work and the work the ALJ found she can perform. (*Id*. at 6–8.) Essentially, Plaintiff argues that her past relevant work and the occupations the ALJ found she can perform "involve[] different basic materials processed, different final products made, different subject matters or data dealt with or applied, different services rendered, and different work processes and products." (*Id*. at 7–8.) Thus, Plaintiff asserts that substantial evidence does not support the conclusion that "very little, if any, vocational adjustment" would be required. (*Id*. at 8.)

Here again, Plaintiff overlooks caselaw and the VE's testimony, which support the ALJ's conclusion that Plaintiff has transferable skills that allow her to perform occupations with little or no vocational adjustment. Importantly, alternate work does not mean identical work and the testimony of a VE can help determine the extent to which a claimant's skills are transferable. *Thompson v. Barnhart*, 148 F. App'x 634, 635–36 (9th Cir. 2005); 20 C.F.R §§ 404.1566(e), 404.1568(d)(3). Moreover, Plaintiff's argument—based on differing Dictionary of Occupational Titles codes—that the occupations the ALJ found Plaintiff actually would require more than a little vocational adjustment lacks support and

has been previously rejected by other district courts in this circuit. *See e.g.*, *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1018 (D. Ariz. 2019); *See, e.g.*, *Cherwink v. Comm'r of Soc. Sec.*, 2018 WL 1050194, *6 (N.D. Cal. 2018). Here, the VE specifically testified that Plaintiff's skills are transferable to sedentary work with "very little, if any, adjustment in terms of tools, work processes, work settings or the industry." (R. at 108.) The ALJ permissibly relied on the VE's expertise in determining that Plaintiff's skills were transferable to sedentary work with minimal adjustment. Accordingly, the ALJ properly relied on the VE's testimony and substantial evidence supports the ALJ's finding that Plaintiff has acquired work skills that are transferrable to other occupations with jobs existing in significant numbers in the national economy. (*Id*. at 24.)

**B. The ALJ correctly found that Plaintiff's mental impairments were nonsevere and appropriately calculated Plaintiff's RFC.**

Plaintiff raises interrelated arguments regarding the ALJ's evaluation of Plaintiff's mental impairments and the ALJ's calculation of Plaintiff's RFC. (Pl. Br. at 13–20.) First, Plaintiff argues that the ALJ erroneously concluded that Plaintiff's mental impairments were nonsevere. (Pl. Br. at 13–17.) Plaintiff bases this argument on another argument that the ALJ improperly gave little weight to the opinions of treating psychiatrist Dr. Bill Sbiliris, M.D. (*Id*.) Second, Plaintiff argues that the ALJ erroneously failed to include any mental limitations in Plaintiff's RFC. Specifically, Plaintiff urges that since the ALJ found at step two that Plaintiff has mild limitations in the functional areas of interacting with others and concentrating, persisting, or maintaining pace, the ALJ erred by not including any mental limitations in Plaintiff's RFC. (*Id*. at 17–20.)

The Court rejects Plaintiff's arguments. First, the ALJ correctly determined that Plaintiff's mental impairments were nonsevere and appropriately evaluated Dr. Sbiliris's opinions. Second, substantial evidence supports the ALJ's calculation of Plaintiff's RFC, even though the ALJ did not include any mental limitations.

. . . .

. . . .

1. **The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Sbiliris's opinions.**

Dr. Sbiliris authored two opinions regarding Plaintiff's mental limitations, which the ALJ rejected for two reasons.[1] (R. at 24, 663–65, 869–71, 878–80, 910–12.) First, the ALJ found that Dr. Sbiliris's opinions were inconsistent with his own progress notes, including Plaintiff's repeated denials of psychiatric problems or symptoms. (*Id.* at 24.) Second, the ALJ discounted the opinions because they were in "checklist format and provide little, if any, supporting evidence." (*Id.*)

An ALJ can find that an impairment or combination of impairments is nonsevere only if it has "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Only one severe impairment is required for a claimant to survive the step-two severe impairment analysis. *Id*. The ALJ must consider all a claimant's medically determinable impairments when calculating her RFC, regardless of whether they are severe. *Id.*; 20 C.F.R. § 404.1523. Consequently, an ALJ's errant failure to treat an impairment as severe is typically harmless if the claimant survives step-two and the ALJ considers all the claimant's medically severe impairments, severe or otherwise. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). An ALJ's step-two determination will be upheld when substantial evidence supports her finding that a claimant's impairment is nonsevere. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

There are unique considerations when a claimant alleges that a mental impairment is severe. The ALJ rates a claimant's degree of functional limitation in four broad functional areas to determine whether her mental impairments are severe. 20 C.F.R. § 404.1520a(c). The functional areas are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the level of impairment on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(3). If the ALJ

---

[1] Plaintiff erroneously claims that Dr. Sbiliris authored four opinions. (Pl. Br. at 15.) However, two of the opinions Plaintiff cites are duplicates of Dr. Sbiliris's January 21, 2016 opinion. (R. at 869–71, 878–80, 910–12.)

- 9 -

finds that the degree of limitation is only mild in each functional area, then she will generally find that the claimant's mental impairment is nonsevere. 20 C.F.R. § 404.1520a(d)(1).

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti*, 533 F.3d at 1041. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c)(1)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion "is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff's argument that the ALJ erroneously characterized her mental impairments as nonsevere would ordinarily be inconsequential since she survived step two of the ALJ's analysis, *i.e.*, the ALJ found she has severe impairments. Further, any mischaracterization by the ALJ would normally be harmless error if the ALJ properly accounted for the claimant's mental impairments in her RFC. Here, however, Plaintiff argues that more than a mischaracterization occurred; instead, Plaintiff argues that the ALJ understated the limiting effects of Plaintiff's mental impairments by undervaluing Dr. Sbiliris's opinions. Thus, if the ALJ undervalued Dr. Sbiliris's opinions and understated the severity of Plaintiff's mental impairments, it is possible the ALJ did not appropriately account for Plaintiff's mental impairments in her RFC. (Pl. Br. at 17.)

Plaintiff's arguments are valid but unsupported by the evidence. Therefore, the Court finds that the ALJ correctly rejected Dr. Sbiliris's opinions and did not err by finding Plaintiff's mental limitations nonsevere. Here, the ALJ's first reason—that Dr. Sbiliris's opinions are inconsistent with his medical records—is sufficient. Dr. Sbiliris's treatment

records largely demonstrate that Plaintiff repeatedly denied psychiatric problems or symptoms. (R. at 550, 552, 554, 556, 558, 560, 688, 772.) This lack of corroboration was a sufficient justification for rejecting Dr. Sbiliris's opinion and it is supported by substantial evidence. 20 C.F.R. § 404.1527(c)(3). Plaintiff's argument that the ALJ "fail[ed] to cite to any record evidence that would support her rejection of the four opinions of the treating psychiatrist" is entirely misplaced. (Pl. Br. at 14) (emphasis in original). Though the ALJ did not cite to the record in the paragraph of her opinion analyzing Dr. Sbiliris's opinions, the ALJ referenced psychiatric findings that she thoroughly detailed and cited just two paragraphs prior. (R. at 23–24.)

Because the ALJ correctly found that Dr. Sbiliris's opinions were inconsistent with his own treatment records, she did not err by rejecting those opinions. Consequently, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are nonsevere.

### 2. The ALJ did not err by not including any mental limitations in Plaintiff's RFC.

Plaintiff argues that "the ALJ's RFC finding is defective because it fails to in any way account for Plaintiff's admitted mental functional limitations." (Pl. Br. at 19.) Specifically, Plaintiff argues that since the ALJ found at step 2 that Plaintiff has mild limitations in interacting with others and in concentrating, persisting, or maintaining pace, the ALJ must account for these limitations in Plaintiff's RFC. (*Id*. at 17–19.)

The Court rejects Plaintiff's argument. Though Plaintiff is correct that the ALJ must account for all limitations in the RFC—those stemming from severe impairments or otherwise—this does not mean that any particular limitation must stem from the ALJ's step two analysis. *See Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims."); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009) ("Bray offers no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities.") In her opinion, the

ALJ correctly explained that Plaintiff's mild mental limitations at step two "are not a [RFC] assessment but are used to rate the severity of [Plaintiff's] mental impairments." (R. at 20.) And because Plaintiff had no more than mild limitations in any functional area, the ALJ determined that her mental impairments are nonsevere. (*Id*.) Further, as discussed above, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments cause "no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. Since, they cause no more than a minimal effect on an [Plaintiff]'s ability to work," the ALJ was justified in not including any mental limitations in Plaintiff's RFC. *Id*. In support, the ALJ detailed the minimal effect Plaintiff's mental impairments (and underlying mild functional limitations) have on her functioning. The ALJ did not err by failing to include mental limitations in Plaintiff's RFC. (R. at 20, 23–24.)

## IV. CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ correctly determined that Plaintiff has work skills—rather than aptitudes—that are transferable to other occupations with jobs existing in significant numbers in the national economy. In making this finding, the ALJ also correctly relied on VE testimony that those skills are transferable to sedentary work with very little, if any, vocational adjustment. Further, substantial evidence supports the ALJ's calculation of Plaintiff's RFC, including her conclusion that Plaintiff's mental impairments are nonsevere and her non-inclusion of mental limitations in Plaintiff's RFC.

**IT IS THEREFORE ORDERED** affirming the May 21, 2019 decision of the Administrative Law Judge (R. at 14–36), as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 18th day of November, 2020.

Honorable John J. Tuchi
United States District Judge